**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Catherine Dougherty, et al., ) | No. CV10-0978 PHX DGC |
| Plaintiffs, ) | |
| ) | **ORDER** |
| vs. ) | |
| Lincare, Inc., a foreign corporation, et al.,) | |
| Defendants. ) | |
| _____ ) | |

Defendant Lincare Inc. ("Lincare") moves for summary judgment, the motion has been fully briefed (Doc. 65, 73, 76), and the parties do not request oral argument. For the reasons that follow, the Court will grant the motion in part and deny it in part.

**I.     Background.**

Some of the facts relevant to this motion are not in dispute.[1] Plaintiff Catherine Dougherty contracted with Lincare in Wisconsin "for the provision of oxygen, related respiratory therapy services, and certain durable medical equipment." Doc. 66 ¶ 3. Mrs. Dougherty's doctor in Wisconsin prescribed her "continuous oxygen at the flow rate of 2.0 liters per minute." *Id.* at ¶ 2. On or about April 28, 2008, Mrs. Dougherty informed Lincare that she was moving to Arizona on May 6, 2008. *Id.* at ¶ 7.

Mrs. Dougherty alleges that she requested portable oxygen for at least five days from

---

[1] Because the parties' statements of facts indicate agreement as to these facts, the Court will cite only to the filing that contains the affirmative statement of fact.

1 a Lincare representative (Doc. 75 ¶¶ 6-8); that the representative left her three oxygen tanks assuring the Doughertys they had plenty of oxygen for the trip (*id.* at ¶ 9); that a hospital along the route checked the oxygen supply and determined it was low (*id.* at ¶ 14); that the Doughertys' attempts to refill the bottles at the hospital and fire station were refused (*id.* at ¶¶ 14, 16); that when Mrs. Dougherty arrived in Phoenix she was admitted to the emergency room with respiratory symptoms (*id.* at ¶¶ 20); that upon admission her oxygen saturation level was 58% and the lab analysis showed "hypoxia" (*id.* at ¶¶ 20, 23); and that she was diagnosed with "respiratory distress, acute myocardial infarction, and new onset atrial fibrillation" (*id.* at ¶ 24). Plaintiffs filed a suit in Maricopa County Superior Court. Doc. 1-1. The case was removed to this Court.

**II.   Discussion.**

Defendant moves for summary judgment. Some of its arguments present issues of law, while others challenge the sufficiency of the evidence. As to the latter, summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court relies on "the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment," and is not obligated to "scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (internal quotation marks and citation omitted).

**A.   Expert Witnesses.**

Defendant asserts that "expert testimony is required both to establish whether an adequate supply of oxygen was delivered to Mrs. Dougherty and whether any alleged failure caused her injury." Doc. 65 at 4:16-18. Defendant argues that it is entitled to summary

judgment because Plaintiffs have identified no expert witness to address these issues at trial. *Id.* at 3-7. Plaintiffs respond that expert testimony is not required, and that hospital records and Defendant's own experts will be sufficient for Plaintiffs' case. Doc. 73 at 6-7, 10.

Ninth Circuit case law suggests that state law governs whether expert testimony is required to establish causation in a diversity action. *See Domingo ex rel. Domingo v. T.K.*, 289 F.3d 600, 607 (9th Cir. 2002) ("Under Hawaiian law, the plaintiff in a medical malpractice action must show causation through expert testimony." (citation omitted)). The relevant inquiry, therefore, is whether an expert witness is required by Arizona law to (1) "establish whether an adequate supply of oxygen was delivered to Mrs. Dougherty" and (2) "whether any alleged failure caused her injury" (Doc. 65 at 4:16-18).

Defendant's motion cites Arizona cases, but none of them specifically addresses these issues and none holds that expert evidence is always required in a case of this kind. Arizona case law suggests that experts may or may not be mandatory depending on the source of the requirement, the cause of action, and the nature of the issue on which the expert's testimony would bear. *See, e.g.*, *Seisinger v. Siebel*, 203 P.3d 483 (Ariz. 2009); *Boyce v. Brown*, 77 P.2d 455 (Ariz. 1938) (noting established law that "negligence on the part of a physician or surgeon, *by reason of his departure from the proper standard of practice*, must be established by expert medical testimony," unless the negligence is grossly apparent (emphasis added)); *Governale v. Lieberman*, 250 P.3d 220 (Ariz. App. 2011).

The Court concludes that Plaintiffs have presented sufficient evidence to raise triable issues of fact on causation. Plaintiffs' evidence, if believed by the jury, will show that Mrs. Dougherty requested portable oxygen for at least five days from a Lincare representative (Doc. 75 ¶¶ 6-8); that the representative left her three oxygen bottles and assured the Doughertys they had plenty of oxygen for the trip (*id.* at ¶ 9); that a hospital along the route checked the oxygen supply and determined it was low (*id.* at ¶ 14); that the Doughertys' attempts to refill the bottles at the hospital and fire station were refused (*id.* at ¶¶ 14, 16); that when Mrs. Dougherty arrived in Phoenix she was admitted to the emergency room with respiratory symptoms (*id.* at ¶¶ 20); that upon admission her oxygen saturation level was

1  58% and the lab analysis showed "hypoxia" (*id.* at ¶¶ 20, 23); and that she was diagnosed
2  with "respiratory distress, acute myocardial infarction, and new onset atrial fibrillation" (*id.*
3  at ¶ 24). A reasonable jury could find from these facts that Defendant provided Mrs.
4  Dougherty with insufficient oxygen and that she suffered adverse health effects, including
5  a heart attack, as a result. Defendant of course will assert through its evidence and experts
6  that these conclusions are not supported, and a jury may choose to believe Defendant in light
7  of the lack of an expert to support Plaintiffs' case. But that issue must be resolved by the
8  jury at trial, not by the Court on summary judgment.

### B. Conserving Device.

Defendant argues that to the extent Plaintiffs assert negligence based on Defendant's failure to provide an oxygen-conserving device, Defendant lacked the authority to provide such device because it was not prescribed. Doc. 65 at 7-12. Plaintiffs respond that the dispositive issue is whether Lincare provided sufficient oxygen, suggesting that whether or not a conserving device was present is not critical to their case. Doc. 73 at 11-12. The complaint clearly alleges Lincare was negligent by both failing to supply sufficient oxygen as well as by failing to provide proper dispensing equipment. *Id.* at 10. Plaintiffs fail to defend the latter theory. Summary judgment will therefore be granted on the claim that Defendant is liable for failing to provide an oxygen-conserving device.

### C. Causation.

Defendant argues Plaintiffs have failed to show that Mrs. Dougherty's injuries were caused by Defendant's alleged negligence. Doc. 65 at 14-15. Plaintiffs respond that the evidence available in this case shows Lincare's conduct is a substantial factor in Mrs. Dougherty's injuries. Doc. 73 at 7-10. Plaintiffs further suggest that hospital records show Mrs. Dougherty's oxygen deprivation and her heart attack are correlated. *Id.* at 12-13.

Under Arizona law, "[t]he proximate cause of an injury is that which, in a natural and continuous sequence, unbroken by an efficient intervening cause, produces an injury, and without which the injury would not have occurred." *Brand v. J.H. Rose Trucking Co.*, 427 P.2d 519, 523 (Ariz. 1967) (citations omitted). "Moreover, there may be more than one

proximate cause of an accident if each was an efficient cause without which the resulting injuries would not have occurred." *Id.* (citations omitted). "In establishing the proximate cause of an accident, speculation cannot be substituted for probative facts after making due allowance for all reasonably possible inferences favoring the party whose case is attacked; and, if a possible reasonable inference is present, the issue must be presented to the jury for its determination." *Id.* at 524 (citation omitted). "When there is any evidence of negligent conduct which reasonable men might infer was one of the proximate causes of the accident, the cause must be submitted to the jury for decision." *Id.* (citation omitted).

Mrs. Dougherty submitted evidence that she asked Defendant for oxygen to last a certain number of days for a trip from Wisconsin to Arizona, that Defendant provided oxygen, that the oxygen lasted a significantly shorter amount of time before it ran out, that Mrs. Dougherty experienced several health issues on the trip, that upon admission to the emergency room her blood oxygen level was 58%, and that medical staff described the latter as hypoxia. A reasonable jury, if it finds the evidence credible, may conclude that Defendant provided less-than-requested oxygen and that a deficiency of oxygen was one of the proximate causes of Mrs. Dougherty's injuries.

### D. Negligent Infliction of Emotional Distress.

Defendant argues Mrs. Dougherty's husband has not presented evidence he suffered a physical injury or was within the zone of danger, thereby failing to establish his negligent infliction of emotional distress claim. Doc. 65 at 13-14. Plaintiffs suggest that this claim is brought by Mrs. Dougherty and her husband independently, and that Mr. Dougherty has experienced stress and anxiety as a result of seeing his wife's health decline. Doc. 73 at 13-14.

Under Arizona law, "[a] negligent infliction of emotional distress cause of action requires the plaintiff to: (1) witness an injury to a closely related person, (2) suffer mental anguish manifested as physical injury, and (3) be within the zone of danger so as to be subject to an unreasonable risk of bodily harm created by the defendant." *Pierce v. Casas Adobes Baptist Church*, 782 P.2d 1162, 1165 (Ariz. 1989) (citations omitted). Defendant

challenged Mr. Dougherty's claim as failing the second and third elements of this test. Plaintiffs' response appears to argue that Mr. Dougherty's anguish manifested as physical injury because he was hospitalized for heart conditions. Doc. 73 at 14. Plaintiffs cite to no evidence supporting this assertion, however, and admit that such evidence "has not been produced to the Defendant." *Id.* at 14:3. Nor do Plaintiffs present evidence that Mr. Dougherty was within the zone of danger created by Defendant's alleged negligence. Plaintiffs have therefore not met their burden of raising a genuine issue of fact from which a reasonable jury could return a verdict on Mr. Dougherty's behalf. Judgment will therefore be entered against Mr. Dougherty on his claim for negligent infliction of emotional distress.

**E.    Loss of Consortium.**

Defendant argues Mr. Dougherty's loss of consortium fails because the other alleged torts fail. Doc. 65 at 14. Because tort claims still remain in this case, the loss of consortium claim also remains.

**IT IS ORDERED:**

1. Defendant's motion for summary judgment (Doc. 65) is **granted in part and denied in part** as stated above.

2. The Court will set a final pre-trial conference by separate order.

DATED this 10th day of August, 2011.

_____
David G. Campbell
United States District Judge